NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JOSEPH MARINO,

Plaintiff,

v.

WESTFIELD BOARD OF EDUCATION, MITCHELL SLATER, MARGARET DOLAN, SANDY MAMAMRY, RICHARD MATTESSICH, ROSANNE KURSTEDT, MARK FRIEDMAN, J. BRENDA GALLIGAN, ANN ORMSBY CARY, GRETCHAN OHLIG, LUCY BIEGLER, BARBARA BALL, JOHN DOE 1-5 (Names being fictitious), ABC CORP. 1-3 (Names being fictitious), RICHARD ROE 1-5 (Names being fictitious), and XYZ CORP. 1-3 (Names being fictitious),

Defendants.

**OPINION**

Civ. No. 16-cv-00361 (WHW) (CLW)

**Walls, Senior District Judge**

Plaintiff Joseph Marino, a middle school teacher and former middle school basketball coach, claims that a member of the Board of Education for the Town of Westfield, New Jersey published defamatory comments about him on Facebook and Twitter and that he was wrongfully terminated from his coaching position despite a winning record. Plaintiff Marino asserts claims against the Defendants Westfield Board of Education, its individual members and affiliates, and unidentified individuals and entities for defamation in violation of state common law and age and gender discrimination in violation of state and federal law. Defendants now move to dismiss several claims of Plaintiff's amended complaint. Decided without oral argument under Fed. R. Civ. P. 78, Defendants' motions are granted in part and denied in part.

**FACTUAL AND PROCEDURAL HISTORY**

For the purposes of this opinion, the Court assumes the truth of the following allegations in the amended complaint: Plaintiff Joseph Marino, a resident of Roselle Park, New Jersey, is a teacher at Roosevelt Intermediate School in the school district of Westfield, New Jersey. Amended Complaint, Notice of Removal Ex. B, ECF No. 1-1 Count One ¶¶ 0, 6.[1] Before the incidents at issue, he had also served as the head coach of the Roosevelt girls' varsity basketball team for fifteen years. *Id.* Count One ¶ 7. Defendant Westfield Board of Education is a public entity engaged in the process of providing public education to students in the Town of Westfield and is located in Westfield, New Jersey. *Id.* Count One ¶ 1. Defendants Mitchell Slater, Mark Friedman, Virginia Leiz, J. Brendan Galligan, Ann Ormsby Cary, Gretchen Ohlig, and Lucy Biegler are all members of the Westfield Board of Education. *Id.* Count One ¶¶ 2, 10. Defendant Margaret Dolan is the Superintendent of Schools for the Westfield Board of Education, Defendant Sandra Mamary (incorrectly captioned and referred to in the complaint as "Sandra Mamamry") is the Supervisor of Athletics for the Westfield Board of Education, and Rosanne Kurstedt is the Vice President of the Board of Education. *Id.* Count One ¶ 10. The Court will refer to these Defendants, including the Westfield Board of Education but not including Mitchell

[1] Each cause of action in the amended complaint has its own separately numbered paragraphs. The paragraphs of Count One are numbered, in order: 1, 2, 3, 4, 5, 6, 7, 5, 6, 7, 8, 7, 8, 9, 10. The amended complaint is rife with errors, including repeated misspellings of the Plaintiff's own name, *see id.* Count Three ¶ 4, Count Five ¶ 9; a paragraph, likely copied and pasted from Count Three, alleging that Plaintiff's ADEA and Title VII injuries were actually caused by the recklessness, carelessness, and negligence of John Does 1-5, *id.* Count Five ¶ 9; and a paragraph in Count Four, apparently copied and pasted from an unrelated complaint, alleging that as a result of ABC Corp. 1-3's actions in connection with Defendant Slater's defamatory statements, Plaintiff Marino "sustained severe and permanent injuries, has not been able to perform his usual functions at the level he used to do prior to the libel and slander, has endured, is enduring and in the future will endure great pain and suffering and the permanent loss of bodily functions." *Id.* Count Four ¶ 4.

Slater, as the "Westfield Board Defendants" and all named, individual Defendants other than Mitchell Slater as the "Individual Board Defendants." Defendants John Doe 1-5 are unknown individuals who "were involved in the facts and circumstances of Plaintiff's Complaint." *Id.* Count One ¶ 3. Defendants ABC Corp. 1-3 are unknown "businesses and/or other entities" who "were involved in the facts and circumstances of Plaintiff's Complaint." *Id.* Count One ¶ 4. Defendants Richard Roe 1-5 are "unknown agents, employees, contractors, and or subsidiary" responsible for the statements alleged in Plaintiff's complaint. *Id.* Count Seven ¶ 3. Defendants XYZ Corp. 1-5 are "unknown entities." *Id.* Count Eight ¶ 2.

On or about October 21, 2014, the Westfield Board of Education held a public session regarding Plaintiff Marino's employment as head coach of the Roosevelt girls' varsity basketball team. *Id.* Count One ¶ 6. That same day, Defendant Slater made allegedly defamatory public statements about Plaintiff Marino on the social networking websites Facebook and Twitter. *Id.* Count One ¶ 7. Slater stated that Marino had called "a teenage girl worthless" and that Marino "was doing it for years is all I can share (and board member kids ever) right now. There is so much more and hopefully those that aren't on the Board that know will come forward. . . ." *Id.* Count One ¶ 5. Despite these comments, Plaintiff Marino claims that he had not received any complaints nor been made subject to any disciplinary actions regarding his "behavior and/or language towards any of his players" during his time as a Roosevelt basketball coach. *Id.* Count One ¶¶ 7-8. As a result of Defendant Slater's comments, Plaintiff Marino allegedly suffered harm "to his reputation and his profession," including a loss of future income and earning capacity. *Id.* Count One ¶¶ 7, 10.

At an unspecified date, Plaintiff Marino was terminated from his coaching position at Roosevelt, despite having "always had winning seasons." *Id.* Count Five ¶¶ 4-5. Plaintiff Marino

was replaced by a "younger female coach who was less experienced," part of an alleged "pattern and practice" by Defendants "whereby older coaches were removed from their positions as coaches for younger coaches." *Id.* Count Five ¶¶ 6-7. As a result of this allegedly unlawful termination, Marino suffered from a loss of income, emotional distress, and a loss of reputation. *Id.* Count Five ¶ 8.

On October 6, 2015, Plaintiff Marino filed a complaint in the Superior Court of New Jersey, Law Division, Union County against Defendants Westfield Board of Education, Mitchell Slater, John Doe 1-5, and ABC Corp. 1-3, bringing claims for defamation and emotional distress in connection with Defendant Slater's allegedly defamatory statements. Complaint, Notice of Removal Ex. A, ECF No. 1-1. According to the Westfield Board Defendants, Plaintiff Marino did not serve any Defendants with the complaint. Notice of Removal, ECF No. 1 ¶ 6.

On December 10, 2015, Plaintiff Marino filed an amended complaint in the same court adding the Individual Board Defendants[2] and seeking to hold Defendants jointly and severally liable for seven causes of action. Count One seeks judgment against all Defendants except Richard Roe 1-5 and XYZ Corp. 1-5 for defamation in connection with Defendant Slater's allegedly defamatory statements. Amended Complaint, ECF No. 1-1 Count One. Count Two seeks judgment against all Defendants for emotional distress in connection with Slater's statements. *Id.* Count Two.[3] Counts Three, Four, Seven, and Eight seek judgment against all Defendants for the alleged recklessness, carelessness, and negligence of Defendants John Doe 1-

[2] The amended complaint does not name Virginia Leiz as a defendant but includes her as a party to be held jointly and severally liable in each of the causes of action.

[3] The exact nature of Count Two of the amended complaint is unclear. Defendant Slater characterizes it as an emotional distress claim, Slater Mot. Dismiss, ECF No. 7 at 1, while the Westfield Board Defendants characterize it as another defamation claim. Westfield Board Defendants Mot. Dismiss, ECF No. 5 at 1-2.

5, ABC Corp. 1-3, Richard Roe 1-5, and XYZ Corp. 1-5, respectively, "in the statements made." *Id.* Counts Three, Four, Seven, Eight. Count Five seeks judgment against all Defendants for age and gender discrimination in violation of the federal Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*, in connection with Plaintiff Marino's alleged termination from his coaching position. *Id.* Count Five. Count Six seeks judgment against all Defendants for age and gender discrimination in violation of the New Jersey Law Against Discrimination ("NJ LAD"), N.J.S.A. 10:5-1 *et seq*, in connection with Marino's termination from his coaching position. *Id.* Count Six. According to the Westfield Board Defendants, Plaintiff Marino served Defendant Westfield Board of Education with the amended complaint and summons on December 22, 2015. ECF No. 1 ¶ 7. None of the other Defendants have been served with either the complaint or the amended complaint. *Id.* ¶ 6.

On January 21, 2016, the Westfield Board Defendants removed the action to this Court under 28 U.S.C. § 1441(a). *Id.* ¶ 9. The Court exercises federal question jurisdiction over Plaintiff Marino's ADEA and Title VII claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

On February 10, 2016, the Westfield Board Defendants moved to partially dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6). Westfield Board Defendants Mot. Dismiss, ECF No. 5. The Westfield Board Defendants argue that (a) the Court does not have jurisdiction over Plaintiff Marino's common law defamation and emotional distress claims because he failed to file a notice of tort claim as required by the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, *et seq*, (b) the defamation and emotional distress claims against the Westfield Board Defendants must be dismissed because they are untimely and fail to allege any actionable behavior, (c) the

ADEA and Title VII claims against the Individual Board Defendants must be dismissed because neither statute provides for liability on the part of an individual other than an employer, and (c) the NJ LAD claims against the Individual Board Defendants must be dismissed because Plaintiff Marino fails to allege that they engaged in, aided, or abetted any discriminatory acts.

On February 16, 2016, Defendant Slater also moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6). Slater Mot. Dismiss, ECF No. 7. Slater repeats the arguments that (a) the state law tort claims must be dismissed because Plaintiff Marino failed to file a notice of tort claim as required by the New Jersey Tort Claims Act, (b) non-employer individuals may not be held liable for violations of Title VII or the ADEA, and (c) Marino fails to allege that Slater engaged in, aided, or abetted any discriminatory acts in violation of the NJ LAD. Defendant Slater also argues that (d) the amended complaint fails to allege any facts pertaining to gender or age discrimination.

Plaintiff Marino filed a letter in opposition to both motions to dismiss on March 10, 2016. ECF No. 10.[4] On March 14, 2016, reply briefs in further support of the motions to dismiss were filed by Defendant Slater, ECF No. 11, and the Westfield Board Defendants, ECF No. 12.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

[4] Under L. Civ. R. 7.1(d)(5), Plaintiff's deadline for submitting a brief in opposition to the Westfield Board Defendants' motion to dismiss was extended to March 7, 2016. ECF No. 9. Despite Defendants' objections, ECF No. 12 at 2-3, the Court will consider Plaintiff's opposition brief, but Plaintiff is instructed that failure to comply with deadlines for future filings may result in the Court's refusal to consider same.

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

If a complaint fails to state a claim upon which relief can be granted, a plaintiff should ordinarily be granted the right to amend its complaint. The Supreme Court has instructed that:

> The grant or denial of an opportunity to amend is within the discretion of the District court, but outright refusal to grant the leave without any justifying reason . . . is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). In the Third Circuit, plaintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile. *Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).[5] In *Shane v. Fauver*, 213 F.3d 113 (3d Cir. 2000), the Third Circuit stated:

> [W]e suggest that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if a timely amendment is not forthcoming within that time. If the plaintiff does not desire to amend, he may file an appropriate notice with the district court asserting his intent to stand on the complaint, at which time an order to dismiss the action would be appropriate.

---

[5] The *Fletcher-Harlee* court stated that "to request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment would be futile." The court in *Fletcher-Harlee* also noted that the longstanding rule that leave to amend a complaint must be granted *sua sponte* stands in tension with the longer-standing rule that a plaintiff must submit a draft amended complaint to the court to allow the court to determine whether amendment would be futile. *Fletcher-Harlee*, 482 F.3d at 252-53.

*Shane*, 213 F. 3d at 116 (citing *Borelli v. City of Reading*, 532 F.2d 950, 951 n.1 (3d Cir. 1976)).

## DISCUSSION

### I. Counts One, Two, Three, Four, Seven, and Eight: Common law tort claims

#### a. Plaintiff did not fail to serve a notice of tort claim on the Westfield Board of Education.

In Counts One, Two, Three, Four, Seven, and Eight of the amended complaint, Plaintiff Marino seeks to hold Defendants liable for common law torts in connection with Defendant Slater's allegedly defamatory statements on Facebook and Twitter. Slater and the Westfield Board Defendants both initially argued that these claims must be dismissed because Plaintiff Marino failed to comply with the timely notice requirement of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, *et seq*. ECF No. 5 at 8-12; ECF No. 7 at 10-13. The Tort Claims Act requires a claimant bringing suit against a public entity or employee of that entity to file a notice of claim with the entity within ninety days of the accrual of the claim or else be 'forever barred' from asserting that cause of action." *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 174 (3d Cir. 2006) (citing N.J.S.A. 59:8-3 and-8; *Moon v. Warren Haven Nursing Home*, 182 N.J. 507, 509 (N.J. 2005)). Defendants initially argued that Plaintiff Marino had failed to do this, but Marino claims that he did file a timely notice of tort claim and has attached as an exhibit a copy of the notice filed with the Town of Westfield on January 5, 2015. ECF No. 10 at 4; P. Reply Ex. A, Notice of Claim, ECF No. 10-1. Plaintiff Slater and the Westfield Board Defendants have withdrawn their arguments, and Defendant Slater no longer seeks to dismiss Counts One and Two against him. ECF No. 11 at 1; ECf No. 12 at 6 n.1. Plaintiff Marino's tort claims are not barred for failure to give notice under the New Jersey Tort Claims Act.

**b. Plaintiff's defamation tort claims against the Individual Board Defendants are time-barred.**

The Individual Board Defendants argue that the defamation claims against them must be dismissed as untimely because Plaintiff Marino did not name them as Defendants until the amended complaint, which was filed after the relevant limitations period expired. ECF No. 5 at 13-14. The Court agrees.

The statute of limitations for defamation claims in New Jersey is one year, and claims accrue on the date of "the publication of the alleged libel or slander." N.J.S.A. 2A:14-3. The discovery rule does not serve to toll defamation actions. *NuWave Inv. Corp. v. Hyman Beck & Co., Inc.*, 432 N.J. Suiper. 539, 568-69 (N.J. App. Div. 2013) (citing *Lawrence v. Bauer Publishing & Printing, Ltd.*, 78 N.J. 371, 396 (N.J. 1979)). If a "defendant's true name is unknown to the plaintiff," Rule 4:26-4 of the New Jersey Rules of Court generally permits a plaintiff to issue process against the defendant by using a fictitious name. The statute of limitations in an action will be tolled if the plaintiff invokes this New Jersey "fictitious party rule" against an unknown defendant before expiration of the limitations period. *DeRienzo v. Harvard Industries, Inc.*, 357 F.3d 348, 353 (3d Cir. 2004). The fictitious party rule will not toll the statute of limitations, though, "if a plaintiff should have known, by exercise of due diligence, defendant's identity prior to the expiration of the statute of limitations." *Id.* (citing *Mears v. Sandoz Pharms., Inc.*, 300 N.J. Super. 622, 693 (N.J. 1997)).

Here Plaintiff Marino filed a complaint against Defendants Westfield Board of Education, Mitchell Slater, and fictitious parties on October 6, 2015, less than one year after Slater made the allegedly defamatory comments. Marino then filed an amended complaint on December 5, 2015 – more than one year after his defamation claims accrued – naming the

Individual Board Defendants. Plaintiff Marino apparently attempts to invoke the fictitious party rule by arguing that his claims against the Individual Board Defendants are timely because the amended complaint included "merely a clarification of the parties responsible for the injuries to the plaintiff." ECF No. at 5.[6]

As Defendants argue, though, the fictitious party rule only tolls the statute of limitations if a plaintiff "diligently seek[s] to identify the fictitiously-named defendant." *Greczyn v. Colgate-Palmolive*, 183 N.J. 5, 11 (N.J. 2005). Plaintiff Marino does not claim to have exercised any diligence at all to discover the names of the Individual Board Defendants. In fact, as Defendants point out, the notice of tort claim attached to Marino's opposition brief and filed with the Town of Westfield on January 5, 2015 lists the Individual Board Defendants by name, demonstrating that Marino knew their identities when he filed the first complaint. ECF No. 12 at 5, 6; *see* ECF No. 10-1 at 8. Because the fictitious party rule did not toll the statute of limitations, Plaintiff Marino's defamation claims against the Individual Board Defendants must be dismissed as time-barred.

**c. Plaintiff fails to allege common law tort claims against the Westfield Board Defendants.**

In any event, all of Marino's common law tort claims must be dismissed against both the Individual Board Defendants and the Westfield Board of Education for failure to state a claim. In New Jersey, an action for defamation requires the plaintiff to establish: "(1) the assertion of a

[6] Plaintiff Marino also states that he simply "amended the Complaint to make the Complaint clearer" because "defendants cannot deny that the Westfield Board of Education is represented by the individual board members." ECF No. 10 at 6. To the extent Marino does *not* claim he was unaware of the identities of the Individual Board Members and simply sought to clarify that they are liable as members of the Board of Education, he provides no justification for his untimely amendment.

false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting to at least negligence by the publisher." *DeAngelis v. Hill*, 180 N.J. 1, 13 (N.J. 2004) (citing Restatement (Second) of Torts § 558 (1977)). Libel is defamation by written or printed words, or by the embodiment of the communication in some tangible or physical form, while slander consists of the communication of a defamatory statement by spoken words, or by transitory gestures." *W.J.A. v. D.A.*, 210 N.J. 229, 239 (N.J. 2012). An action for intentional infliction for emotional distress requires a plaintiff to show "(1) intentional conduct; (2) the conduct was extreme and outrageous; (3) the conduct proximately caused plaintiff's emotional distress; and (4) the emotional distress was severe." *DeAngelis*, 180 N.J. at 20 (citation omitted).[7]

Plaintiff Marino makes no specific factual allegations regarding the defamatory actions of the Westfield Board Defendants.[8] Instead, he simply seeks to hold them jointly and severally liable for the damages caused by Defendant Slater's allegedly defamatory statements, Amended Complaint Count One ¶ 10, as well as John Doe 1-5, ABC Corp. 1-3, Richard Roe 1-5, and XYZ Corp. 1-5's alleged recklessness, carelessness, and negligence "in the statements made," *id.* Count Three ¶¶ 3-4, Count Four ¶¶ 3-4, Count Seven ¶¶ 3-4; Count Eight ¶¶ 3-4. Marino states

[7] To the extent that Plaintiff Marino charges Defendants with negligent infliction of emotional distress, the New Jersey Supreme Court has held that such a claim based on the publication of a false statement requires the plaintiff to demonstrate that the defendant engaged in *per se* defamation. *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 432 (N.J. 1989). As the Court will discuss, Plaintiff fails to meet this standard.

[8] In his opposition brief, Plaintiff Marino makes the new factual allegation that Defendant Mattessich told attendees of the October 21, 2014 Board meeting that "coaches cannot be disparaging players." ECF No. 10 at 5. The Court need not determine whether this statement is defamatory because it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). This allegation is not in the complaint and will not be considered.

that all of the Defendants, "jointly and severally, engaged in purposeful, reckless, careless, and negligent statements," further specifying that "Defendants made false statements of fact which was circulated social media," *id.* Count Two ¶ 3, but he only alleges that Slater made any specific false statements.

With regard to the claims against the Westfield Board of Education itself, New Jersey does recognize the doctrine of *respondeat superior* for employers in defamation claims. *Senna v. Florimont*, 196 N.J. 469, 501 n.22 (N.J. 2008). But an employer will only be held vicariously liable for the tortious act of an employee if the employee committing the act was acting within the scope of his employment. *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 771 (N.J. 1989). Plaintiff Marino does not allege that Defendant Slater's Facebook and Twitter posts were actions "of the kind that [Slater] is employed to perform" or occurred "within the authorized time and space limits" of his role as a Board member, *id.* (quoting *Di Cosala v. Kay*, 91 N.J. 159, 169 (N.J. 1982), so the amended complaint fails to state a vicarious liability claim against the Westfield Board of Education.

Plaintiff Marino does not allege that the Individual Board Defendants were his employers, and he cannot establish liability simply by attributing Slater's actions to all "Defendants." Nor can he establish liability through the Individual Board Defendants' alleged "acquiescence through silence" to statements made during the October 21, 2014 Board meeting, ECF No. 10 at 5, because (a) the amended complaint alleges only that Slater posted defamatory statements on Facebook and Twitter, not that any defamatory statements were made at the Board meeting, and (b) mere "silence" cannot constitute libel or slander. Silence, alone, is not written or printed words, spoken words, or a transitory gesture. *See* Restatement (Second) of Torts § 568 (transitory gestures include gestures "commonly understood as a substitute for spoken words

such as a nod of the head, a wave of the hand or a sign of the fingers"). The amended complaint fails to allege common law tort claims against the Westfield Board Defendants. Counts One, Two, Three, Four, Seven, and Eight are dismissed without prejudice with respect to the Westfield Board Defendants.

## II. Count Five: the ADEA and Title VII do not provide for individual liability of non-employers.

Defendant Westfield Board of Education does not move to dismiss Count Five, which charges Defendants with gender and age discrimination in violation of the ADEA and Title VII. Defendant Slater and the Individual Board Defendants move to dismiss Count Five on the ground that the two statutes do not provide a cause of action against non-employer individuals. ECF No. 5 at 15-16; ECF No. 7 at 14-15. The Court agrees.

Though Third Circuit precedent as to the ADEA is "not quite ironclad," both the ADEA and Title VII "do not impose liability on individuals who are not themselves employers." *DeSantis v. New Jersey Transit*, 103 F. Supp. 3d 583, 589 (D.N.J. 2015) (citing *Parikh v. UPS*, 491 Fed App'x 303, 308 (3d Cir. 2012) ("Neither Title VII nor the ADEA provides for individual liability"); *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 (3d Cir. 2006) (stating in dicta that "the ADEA does not provide for individual liability"); *Emerson v. Theil College*, 296 F.3d 184, 190 (3d Cir. 2002) ("[I]ndividual employees are not liable under Title VII")).

Plaintiff Marino acknowledges that individual employees may not be held responsible for Title VII and ADEA violations, ECF No. 10 at 13, but he claims that all of the Defendants "are more than just supervisors, they are actually the embodiment of the Westfield Board of Education." *Id.* at 7. Plaintiff Marino provides no legal basis for this argument, and his amended complaint does not allege that Defendant Slater or any of the Individual Board Defendants are or

were his employers. The ADEA and Title VII claims brought against them in Count Five of the amended complaint must be dismissed.

## III. Count Six: NJ LAD violations for age and gender discrimination

### a. Plaintiff adequately alleges that Defendant Westfield Board of Education violated the NJ LAD's age discrimination provision only.

Defendant Westfield Board of Education moves to dismiss Count Six, which charges Defendants with gender and age discrimination in violation of the NJ LAD in connection with Marino's termination from his coaching position, for failure to state a claim. The Court dismisses the gender discrimination claim only.

The NJ LAD prohibits the unjustified "discharge" of an employee by an employer because of sex, gender identity or expression, or age. N.J.S.A. 10-:5-12(a). Westfield Board of Education first claims that Plaintiff Marino was not actually discharged because his coaching position was "an uncertified extracurricular position to which the employee has no right to tenure or continued employment from year to year." ECF No. 5 at 18 (citing N.J.S.A. 18A:28-4). Westfield Board of Education also claims that it cannot be held liable for Marino's alleged discharge because it had no power to re-appoint Marino to his position without the recommendation of Defendant Dolan, the Board's Superintendent. *Id.* at 18-19 (citing N.J.S.A. 18A:27-4.1)

Though the Court takes notice of these statutes, it is required to accept as true Plaintiff Marino's allegation that he was terminated by his employer. *Iqbal*, 556 U.S. 678. Whether Marino's position was in fact a year-to-year "uncertified extracurricular position," whether he was terminated mid-year or was simply not re-appointed, and whether Defendant Dolan

prevented the Board of Education from re-appointing Marino by withholding her recommendation are all questions of fact inappropriate for resolution on a motion to dismiss.

Westfield Board of Education also argues that the allegations in the amended complaint are too vague to meet the pleading standards for age or gender discrimination under the NJ LAD. In general, to establish a prima facie case for unlawful termination under the NJ LAD, a plaintiff must demonstrate that he: (1) belongs to a protected class, (2) was qualified for the position held, (3) was terminated despite adequate qualifications, and (4) after termination the position remained open and the employer continued to seek applications." *Monaco v. American General Assur. Co.*, 359 F.3d 296, 301 (3d Cir. 2004) (citing *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 201 (N.J. 1999)). In an age discrimination case, the fourth element is satisfied when a plaintiff shows that he was replaced by "a candidate sufficiently younger to permit an inference of age discrimination." *Id.* (citing *Sisler*, 157 N.J. at 213). In a case where the plaintiff is not a member of a protected class, such as a gender discrimination claim brought by a man, the first element is satisfied when a defendant shows "background circumstances support[ing] the suspicion that the defendant is the unusual employer who discriminates against the majority." *Sisler*, 157 N.J. at 214 (quoting *Erickson v. Marsh & McLennan Co., Inc.*, 117 N.J. 539, 551 (N.J. 1990)).

The amended complaint lacks detail, but it does allege that (a) Plaintiff Marino was a "good" coach with a winning record, (b) he was terminated from his position, (c) he was replaced by a "younger female coach who was less experienced," and (d) this appointment was part of a "pattern and practice whereby older coaches were removed from their positions as coaches for younger coaches." Amended Complaint Count 6 ¶¶ 4-7. These allegations are sufficient to withstand dismissal of Marino's age discrimination claim but insufficient to support

the gender discrimination claim. The complaint alleges that "older coaches," including Marino, were discharged in favor of younger coaches, but it does not actually allege that Marino's gender had anything to do with his termination. That his replacement was a woman is "merely consistent with a defendant's liability" and "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation omitted).

In his opposition to the motions to dismiss, Plaintiff Marino makes several additional factual allegations in support of his NJ LAD claim. One of them, the allegation that Defendant Mamary "thought that a female coach would be good for the Girls' Basketball team," ECF No. 10 at 9, directly relates to the gender discrimination claim. But these new facts have no place in the Court's 12(b)(6) analysis; to repeat, a "complaint may not be amended by the briefs in opposition to a motion to dismiss." *PepsiCo*, 836 F.2d at 181.

The Court dismisses the NJ LAD gender discrimination claim against Westfield Board of Education without prejudice. The age discrimination claim survives.

**b. Plaintiff alleges that Defendants Mamary and Dolan aided or abetted a violation of the NJ LAD but fails to allege that Slater and the remaining Individual Board Defendants are liable.**

Defendant Slater and the Individual Board Defendants move to dismiss Count Six on the ground that the amended complaint fails to allege that any individuals "aided and abetted" Marino's termination. ECF No. 5 at 16-18; ECF No. 7 at 16-17. The Court partially agrees.

Unlike the ADEA and Title VII, the NJ LAD provides a cause of action against non-employer individuals. It is unlawful "[f]or any person, *whether an employer or an employee or not*, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden" by the NJ LAD. *Tarr v. Ciasulli*, 181 N.J. 70, 83 (N.J. 2004) (citing N.J.S.A. 10:5-12(e)) (emphasis added).

Forbidden acts include the "discharge" of an employee because of sex, gender identity or expression, or age. N.J.S.A. 10:5-12(a). To repeat, the amended complaint does not allege that Defendant Slater or any of the Individual Board Defendants are or were Plaintiff Marino's employers.

To determine the liability of a non-employer individual under the NJ LAD, the New Jersey Supreme Court has adopted the Third Circuit's definition of "aiding and abetting," itself taken from the Restatement (Second) of Torts § 876(b). "[I]n order to hold an employee liable as an aider or abettor, a plaintiff must show that: '(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Tarr*, 181 N.J. at 84 (quoting *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999) (abrogration on other grounds recognized by *Nance v. City of Newark*, 501 Fed App'x 123 (3d Cir. 2012)). Whether the defendant provided "substantial assistance" is determined using five factors: (1) the nature of the act encouraged, (2) the amount of assistance given by the [defendant], (3) whether the [defendant] was present at the time of the asserted harassment, (4) the [defendant's] relations to the others, and (5) the state of mind" of the defendant." *Id.* (citing *Hurley*, 174 F.3d at 127; Restatement (Second) of Torts, § 876(b) comment d).

Here Plaintiff Marino makes no specific allegations regarding the actions or state of mind of any of the individual Defendants in his termination.[9] He simply claims that he "was

---

[9] Again, Plaintiff Marino makes new factual allegations in his opposition letter that the Court will not consider in its reasoning. ECF No. 10 at 11-12. In any event, "failing to investigate" or to "take steps to correct" Marino's alleged termination, *id.* at 12, without any claim that the Individual Defendants were even aware of the alleged discrimination, does not rise to the level of "substantial assistance." *See*, e.g., *Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998)

wrongfully terminated," without attributing his termination to any specific party, and that "[t]he defendants, jointly and severally, engaged in a pattern and practice" of discrimination. Amended Complaint, Count Six ¶¶ 4, 6. These "naked assertions" are not enough to state a claim against Defendant Slater or the Individual Board Defendants. *Iqbal*, 556 U.S. 662, 678.

In their reply brief, however, the Individual Board Defendants appear to admit that Defendants Dolan and Mamary, the Superintendent of Schools and Supervisor of Athletics, were the individuals who failed to recommend Marino for appointment in an allegedly discriminatory manner. ECF No. 12 at 6-7. Defendants argue that the complaint nevertheless fails to state a claim against Dolan and Mamary because "an individual supervisor cannot be held liable individually under the LAD based upon allegations that she merely assisted herself in committing a violation of the LAD." ECF No. 12 at 7 (citing *Putterman v. Weight Watchers Int'l, Inc.*, 2010 WL 3310706, *2 (D.N.J. Aug. 9, 2010); *Newsome v. Administrative Office of the Courts of New* Jersey, 103 F. Supp. 2d 807, 823 n.19 (D.N.J. 2000); *Harmon v. Benis Co., Inc.*, 2005 WL 1389174, *10 (N.J. Superior Ct. Law. Div., April 12, 2005)).

This is incorrect. Though it is a "somewhat awkward theory of liability," the Third Circuit has held that a supervisor may be held personally liable for aiding or abetting her own discriminatory conduct. *Hurley*, 174 F.3d at 127 (explaining the "principles that might allow a harassing supervisor to be individually liable for aiding and abetting the actionable conduct of his employer, when the challenged conduct is failing to stop the supervisor's own harassment");

---

(Police chief who failed to accommodate handicapped employee could be held liable under aiding and abetting theory only if he knew failure to accommodate was breach of duty and his inaction "actually assisted or encouraged the unlawful act"); *Bowers v. National Collegiate Athletic Ass'n*, 151 F. Supp. 2d 526, 542 (D.N.J. 2001) (Defendant's failure to act with knowledge that co-defendant's allegedly discriminatory policies were "under scrutiny" did not rise to level of "substantial assistance").

*see also DeSantis v. New Jersey Transit*, 103 F. Supp. 3d 583, 591 (D.N.J. 2015) ("New Jersey courts have held that an individual can aid and abet, not only the conduct of another person, but that person's own conduct. That implies the availability of personal liability for a violation of the NJLAD.") (citing *Cicchetti v. Morris County Sheriff's Office*, 194 N.J. 563 (2008)); *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 462 (D.N.J. 2009) (Walls, J.) ("The LAD does not impose individual liability upon non-supervisory employees, but a supervisor may be liable for aiding and abetting his or her own conduct.") (citing *Hurley*, 174 F.3d at 126); *Cowher v. Carson & Roberts*, 425 N.J. Super. 285, 303-04 (N.J. App. Div. 2012) (question of fact existed whether two supervisors aided and abetted workplace harassment by making anti-Semitic comments and failing to restrain each other from making comments).

To the extent that the cases cited by Defendants hold otherwise, these cases all appear to spring from the court's misreading of *Hurley* in *Newsome*. *See Newsome*, 103 F.Supp. 2d at 823 (citing *Hurley* to hold that supervisor "cannot aid and abet his own wrongful conduct"); *Putterman*, 2010 WL 3310706, at *2 (citing *Newsome* for same proposition); *Harmon*, 2005 WL 1389174, at *10 (citing *Newsome* for same proposition). In any event, the Court is not bound by these decisions. Because the Individual Board Defendants admit that Defendants Dolan and Mamary were responsible for Plaintiff Marino's allegedly unlawful termination, and because the amended complaint states a facially valid claim for age discrimination, the NJ LAD age discrimination claims against Defendants Dolan and Mamary in Count Six are not dismissed. For reasons discussed, the gender discrimination claims against Dolan and Mamary are dismissed. Count Six is dismissed entirely with respect to Defendant Slater and the remaining Individual Board Defendants.

NOT FOR PUBLICATION

## CONCLUSION

Defendant Slater's motion to dismiss is granted in part and denied in part. The Westfield Board Defendants' motion to dismiss is granted in part and denied in part. Counts One, Two, Three, Four, Seven, and Eight are dismissed without prejudice as to the Westfield Board Defendants. Count Five is dismissed with prejudice with respect to all claims against Defendant Slater and the Individual Board Defendants. Count Six is dismissed without prejudice with respect to all claims against Defendant Slater and Defendants Mattessich, Kurstedt, Freidman, Galligan Ormsby Cary, Ohlig, Biegler, and Ball and the gender discrimination claims against Defendants Westfield Board of Education, Dolan, and Mamary. Plaintiff is granted leave to seek to amend within 90 days of the date of this opinion. An appropriate order follows.

DATE: 18 May 2016

William H. Walls
Senior United States District Court Judge